UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **PRITHPAL SINGH,**<br><br>    Plaintiff,<br><br>v.<br><br>**STATE FARM FIRE & CASUALTY CO.,**<br><br>    Defendant. | Civil Action Number:<br>**5:16-cv-1447-AKK** |

### MEMORANDUM OPINION AND ORDER

Prithpal Singh brings this action against State Farm Fire & Casualty Co., alleging claims for breach of contract for a loss he sustained to his house as a result of a storm. *See generally* doc. 1-1. The court has for consideration State Farm's motion for partial summary judgment related to the mold damage, doc. 13, which is fully briefed, docs. 13; 15; 16, and ripe for review. For the reasons stated more fully below, in particular endorsement FE-3413 which is referenced in the Declarations Page and Renewal Certificate of Singh's policy and which excludes coverage for mold damage, the motion is due to be granted.

### I. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient

competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

In 2015, Singh became a named insured under a State Farm homeowner's policy. Docs. 15 at 2; 15-1 at 2; 15-6 at 3. The "sample" copy of the policy Singh received later contained no endorsements or references. Docs. 15 at 2; 15-1 at 2–3; 15-2. Singh alleges that he first saw the "Certified Policy Record" and accompanying endorsements when State Farm attached them as exhibits to its motion for partial summary judgment. *See* docs. 15-1 at 3; 15-6.

In June 2015, a storm damaged the roof of Singh's home, causing, among other things, significant water leakage and mold damage to the home's foundation.

Docs. 15 at 6–7; 15-1; 15-4 at 2; 15-5. After Singh reported his losses to State Farm, he received a "partial" replacement estimate cost of $25,912.92 from State Farm, which excluded coverage for the mold damage. Docs. 15 at 7; 15-4 at 2. Although Singh disagreed with the "partial loss" assessments, State Farm purportedly refused to discuss the matter with him. *See* doc. 15-1 at 4–5. As a result, Singh hired Terrell Technical Services, which subsequently reported that "[t]he fungal growth, water staining, and/or water damage on finishing and/or construction materials within the interior, attic, and crawlspace of the home appear to be the result of direct water intrusion that occurred following the fallen tree limbs that damaged the southwest portion of the roofing system." Doc. 15-5 at 7; *see also* doc. 15-1 at 5. Based upon the extent of the fungal contamination, certified indoor environmental consultants and hygienists recommended that Singh undertake remediation efforts. Docs. 15 at 8; 15-5 at 8.

Despite these findings, State Farm "averred [that] any resultant mold from the covered loss was not covered under the policy," based on policy endorsement FE-3413 (the "Endorsement") which lists "fungus" under "Losses Not Insured." Docs. 13 at 3–5; 15 at 8; 15-6 at 16. Accordingly, Singh filed this lawsuit alleging that State Farm "improperly construed, has refused to pay, improperly paid or paid less than required" certain coverages Singh should have received pursuant to his policy. Docs. 1-1; 13 at 3–5; 15 at 9; 15-1 at 4–5.

## III. ANALYSIS

Singh's complaint pleads one count for breach of contract against State Farm for "refusing to pay, improperly [paying], or [paying] less than required," for losses he incurred following a "catastrophic loss" from storm damage that he alleges is covered by his insurance policy. Doc. 1-1 at 6. State Farm seeks summary judgment solely as to Singh's claim related to the denial of the damage for mold. *See generally* doc. 13. Particularly, State Farm contends that the policy "specifically excludes mold from coverage, regardless of how and why such mold damage occurred." Doc. 13 at 7.

"General rules of contract law govern an insurance contract." *Safeway Ins. Co. of Alabama v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). To prevail, Singh must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003) (citations and quotations omitted). The parties do not dispute the existence of a valid and enforceable contract as of the date of the loss. At issue here is Singh's contention that the Endorsement — which he admits excludes coverage for the mold damage at issue, *see* doc. 15 at 9 ("[t]hus, the purported endorsement moves mold and fungus damage from a provision that provides coverage if mold arises from a covered loss to a provision that provides no coverage regardless of cause")

— is not part of his policy because he never received a copy of it or the Certified Policy Record. *Id.* at 9, 11; *see also* doc. 15-1 at 3. Based on the record, the court finds that the Endorsement was indeed part of Singh's policy.

Singh admits that he received "coverage declaration sheets showing [his] coverage and premium amounts." Doc. 15-1 at 3. Based on this contention, the court assumes Singh is referring to the Declarations Page found at doc. 15-6 at 3 or the Renewal Certificate found at 15-6 at 7, which contain the annual premium amount.[1] Significantly, both the Declarations Page and the Renewal Certificate list the Endorsement in the policy's Loss Settlement Provision section. Doc. 15-6 at 3 and 7. Moreover, the Declarations Page states that "[y]our policy consists of this page, any endorsements and the policy form." *Id.* at 3.

Under Alabama law, "[a]lthough [Singh] claim[s] not to have received [the Endorsement], [he] had some duty to investigate the contents of those forms because the declarations page indicated that the forms were part of the policy." *Am. Bankers Ins. Co. of Fla. v. Tellis*, 192 So. 3d 386, 390 (Ala. 2015), *reh'g denied* (Sept. 18, 2015). Therefore, even if Singh did not receive the Certified Policy Record, doc. 15-6, or a copy of the Endorsement at issue, absent a showing that the text of the Endorsement State Farm is relying on is different from the one

---

[1] Although Singh admits to receiving coverage declaration sheets, he states in the next paragraph that "[t]he last 25 pages of Exhibit 6 are the only documents received as being in my policy." Doc. 15-1 at 3. The court interprets this statement to mean that Singh is maintaining that he never received the FE-3413 Homeowner's Policy Endorsement that is at doc. 15-6 at 12–20.

6

referenced in the coverage declarations sheets, Singh is bound by the terms of the Endorsement in light of his failure to investigate the contents of the Endorsement referenced in his policy.[2] *See Alfa Life Ins. Corp. v. Colza*, 159 So. 3d 1240, 1251 (Ala. 2014) (acknowledging "plaintiff's general duty . . . to read the documents received in connection with a particular transaction, along with a duty to inquire and investigate" and that "it is almost never reasonable for an individual to ignore the contents of documents given him or her in association with a transaction")

---

[2] As it relates to damages for mold, the Endorsement provides in relevant part:
**SECTION I – LOSSES NOT INSURED**
. . .
2. g. **Fungus.** We do not cover:
(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus;**
(2) any remediation of **fungus**, including the cost to:
(a) remove the **fungus** from covered property or to repair, restore or place that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

Doc. 15-6 at 16–17 (emphasis in original); *see also id.* at 32 (in the corresponding body of "Section I – Losses Not Insured" of the homeowner's policy that the Endorsement amends, State Farm instructs: "2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these").

(citations and quotations omitted). As such, because the Endorsement is clear that it does not cover mold damage even where, as here, it is caused by the storm damage to the roof, no coverage is due under the policy.[3]

## IV. CONCLUSION AND ORDER

Accordingly, because Singh is bound by the policy exclusions listed in the Endorsement, State Farm's partial motion for summary judgment, doc. 13, is **GRANTED**, and Singh's claims related to mold damage are **DISMISSED WITH PREJUDICE**.

**DONE** the 9th day of August, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[3] Because Singh was on notice that his policy included the Endorsement and it is undisputed that the Endorsement excludes mold damage regardless of the cause, Singh's contention that the original policy is ambiguous is unavailing. In any event, in light of the court's finding regarding the Endorsement, the court need not discuss the terms of the original policy or the training manual Singh cites.